UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LINDA RAE CLABORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0159-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Linda Rae Claborn seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the Court affirm the Commissioner's decision.

**I.   Facts**

Claborn filed her application for DIB on August 8, 2001, alleging that she was disabled and unable to work beginning March 1, 1987, due to a number of medical problems including depression. (Tr. 13, 84, 88.) It was determined, however, that the last date she was insured for DIB was June 30, 1975, and the Social Security Administration permitted her to

amend her onset date of disability from August 8, 1987, to March 31, 1975. (Tr. 13, 63, 84.) The period of time between March 31, 1975, and June 30, 1975, is critical in this case because Claborn alleged that she became disabled on March 31, 1975, and her insured status for purposes of DIB eligibility expired on June 30, 1975.[1] (Tr. 13, 84.)

During the time period relevant to Claborn's claim, she was twenty-four years old and suffered from psychiatric problems that began when she was a teenager. (Tr. 16, 20, 151.) According to medical records, physicians diagnosed her with schizophrenia when she was a teenager and continued to diagnose her with the illness up to and during the time period relevant to her claim. (Tr. 124, 151.)  Claborn's schizophrenia caused her to experience psychotic episodes involving delusions and auditory and visual hallucinations for which she was hospitalized a number of times between 1969 and 1973. (*See, e.g*., Tr. 129-33, 151-60.) During that period physicians attempted to control her symptoms with a variety of treatments including electric shock therapy, psychotherapy, and psychotropic drugs, including Thorazine, Stelazine, and Artane. (*Id*; Tr. 140.)   After 1973, Claborn's schizophrenia was controlled without recurrence of psychotic episodes. (Tr. 108-20.)

---

[1] A claimant is not entitled to DIB unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing *Ivy v. Sullivan,* 898 F.2d 1045,1048 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of his insured status)); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1).

**II.    Points of Error**

Claborn brings two points of error. In her first point of error she argues that the Administrative Law Judge (ALJ) did not follow the holdings set forth in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986) and *Leidler v. Sullivan*, 885 F.2d 291 (5th Cir. 1989). She argues that based on statements made during the hearing, the ALJ was under a mistaken impression that a claimant must suffer from a mental impairment for a consecutive twelve-month period in order to be found disabled. She further contends that the ALJ also failed to determine that she was capable of maintaining a job despite her mental impairments. In her second point of error Claborn argues that the ALJ failed to conduct a fair and impartial hearing.

**III.    Discussion**

The principle issue raised in Claborn's appeal relates to the duration requirement in the Social Security Act. Under 42 U.S.C. § 423(d)(1)(A) "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. The holdings in *Singletary* an*d Leidler* provide that under the duration requirement of 42 U.S.C. § 423(d)(1)(A) the claimant need only show that his impairment has lasted or can be expected to last for twelve months; the claimant need not show that because of his impairment he is or was unable to engage in work during the entire twelve-month period. *Singletary*, 798 F.2d at 822. In these cases, the Fifth Circuit Court of

3

Appeals also acknowledged that a claimant with mental impairments may experience severe symptoms that wax and wane during a twelve-month period, thus presenting symptom free intervals during which the claimant would be capable of working. The court in *Singletary* directed that such a situation does not necessarily require a finding that the claimant is not disabled and explained:

> Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

*Id*.

In *Barnhart v. Walton*, 535 U.S. 212 (2002), the United States Supreme Court addressed the duration requirement as it was applied to deny benefits to a claimant with schizophrenia. *Id*. at 218-19. In *Walton* the claimant developed schizophrenia and associated depression and lost his job as a full-time teacher on October 31, 1994. *Id*. at 215. The claimant found a part-time job in mid 1995 and was engaging in substantial gainful activity by the end of September 1995. Based on the regulations and rulings, the Commissioner found that the claimant was not disabled because he had not met the duration requirement as his mental illness had prevented him from working for only eleven months. *Id.* at 217. The decision was based on an interpretive ruling which provides that a claimant is not disabled if "'within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity.'" *Id*. at 218 (citing Fed. Reg. 42774) (2000).

The Supreme Court found that the statute did not forbid the Commissioner's interpretation, that the interpretation was permissible, and that the statute was ambiguous with respect to whether a claimant's impairment must be severe enough to prevent work for a twelve-month period but that it could fairly be inferred that the "inability" in the statute must last for twelve months. *Id.* at 218-19. The court also acknowledged that this interpretation reflected the Social Security Administration's long-standing rules regarding the duration requirement found in Ruling 82-52. *Walton*, 535 U.S. at 219 (citing 1982 WL 31376, SSR 82-52 at *1 "'Duration of impairment' . . . refers to that period of time during which an individual is continuously unable to engage in [work].")

The holdings in *Walton*, *Leidler*, and *Singletary* make clear that a claimant is required to show that his impairment has lasted or is expected to last at least twelve months. *See Walton*, 535 U.S. at 218-19; *Leidler*, 885 F.2d at 292; *Singletary*, 798 F.2d at 821. Claborn met this requirement. The evidence shows that her mental illness lasted a number of years. (Tr. 99-160.) However, based on the holding in *Walton*, and the Commissioner's regulations interpreting § 423(d)(1)(A), Claborn was also required to show that her mental illness prevented her from working for twelve months. *Walton*, 535 U.S. at 218-19; *compare Singletary*, 798 F.2d at 821 ("The statute quite clearly requires that it is the impairment only which must last for a continuous period.")

Although the holdings in *Walton, Singletary* and *Leidler* conflict in regard to the duration requirement, the holding in *Walton* does not directly abrogate *Singletary's* holding that symptom-free intervals do not foreclose a finding that a claimant is disabled. Nor does

*Walton* absolve the decision-maker of the task set forth in *Singletary* to determine whether a claimant such as Claborn can obtain and maintain work. Nonetheless, nothing in *Singletary* or *Leidler* requires that this case be remanded. Although Claborn met the duration requirement in regard to her impairment, she did not show that her impairment was so severe that it precluded all work for a period of twelve months. Applying *Singletary* and *Leidler* in this case, after 1973 there is no evidence of a situation in which symptoms waxed and waned; Claborn did not experience symptom free periods followed by relapses into periods of debilitating symptoms.

The medical evidence establishes that Claborn suffered from schizophrenia that was undoubtedly disabling in the early years of the 1970s. (Tr. 129-33, 151-60; *see also* Tr. 776-78 (medical expert testified that Claborn's impairments may have met the criteria of a listing in the regulations in the early part of the decade).) However, the medical evidence firmly establishes that Claborn was not disabled after her alleged onset of disability. In fact, from the fall of 1973 until at least 1978 Claborn did not suffer severe symptoms that would meet

the criteria of a listed impairment in the regulations or that would preclude her from performing the type of work set forth in the ALJ's decision.[2]

The evidence shows that prior to a hospitalization in October 1972, Claborn's schizophrenia required multiple hospitalizations for symptoms including delusions, hallucinations, and other behaviors, that would have precluded her ability to maintain work. (Tr. 132-47, 151, 155-56.)  After Claborn was released from the hospital in October 1972, her symptoms waxed and waned throughout the remainder of the year and during a large part of 1973, which might have prevented her from maintaining work at that time.  (Tr. 130-32.) *See Singletary*, 798 F.2d at 823.  However, Claborn experienced an improvement in her symptoms beginning in fall 1973 and her condition did not pose significant limitations thereafter.  Nor is there evidence that she experienced waxing and waning of debilitating symptoms from that
 time forward.

The medical records specifically show that Claborn was doing well and working in September 1973.  In November 1973 she continued to do well with medication, was pregnant, and working.  (Tr. 129.)  Claborn continued to do well without incident or complaint of psychotic or severe psychiatric symptoms throughout the remainder of 1973, throughout 1974, and most of 1975. (Tr. 122, 129.) The medical records establish that her condition remained stable during this period, she suffered no decompensations or other

---

[2] The ALJ determined that Claborn retained the ability to perform light work that would not involve more than superficial interaction with the public and co-workers and that involved no more than simple instructions.  (Tr. 17-18.)

7

incidents that might be attributed to her psychiatric impairments, and despite discontinuing her psychotropic prescription drugs in December 1974, she remained stable. (Tr. 122, 129.) In sum, Claborn's psychiatric condition remained stable for a period of one and one-half years, during which she both took psychotropic drugs and discontinued taking psychotropic drugs. Claborn did not seek psychiatric help again until May 1975 (six months after she discontinued her medication ) and reported that she "was getting bad again." (Tr. 122, 124, 129.) However, her condition was not as severe as it was prior to fall 1973; she was not delusional and was not experiencing hallucinations, and Dr. Raines prescribed Thorazine for the purpose of helping her fall asleep at night. (Tr. 122.)

Thereafter, Claborn experienced a minor setback in September 1975 when she overdosed on Thorazine. (Tr. 161.) There is no indication in the records from the hospital or Claborn's physicians that the overdose was related to the debilitating symptoms that required hospitalizations prior to this time. *Id.* Further, the records do not explain why Claborn overdosed. However, after her release from the hospital Claborn reported to her therapist that she had stopped taking her medication and was depressed. (*See* Tr. 116, 161.) The medical records also show that thereafter Claborn experienced some depression but was improved within two months. (Tr. 113.) After her depression improved, she remained stable throughout 1976 and up until the summer of 1977, at which point it was determined that she was "doing extremely well" and treatment was terminated. (Tr. 99-114; *see* Tr. 101.)

8

The time line provided in the medical records shows that Claborn suffered very little, if any, symptoms from her mental illness from early fall 1973 until May 1975. (Tr. 122-29; *see* Tr. 124 (Claborn's husband reported that he did not know that anything was "wrong" until Claborn asked to see Dr. Raines again in May 1975).) At that time Claborn began taking prescription medication again. Thereafter the records show that with the exception of the overdose in September 1975, which required hospitalization over a weekend, she suffered only sporadic depression and anxiety and underwent therapy which consisted primarily of efforts to correct cognitive and behavioral patterns.[3] (Tr.108-20.)

In sum, the facts establish that the severe psychotic and psychiatric symptoms caused by Claborn's schizophrenia were responsive to treatment from fall 1973 until at least 1978 when her therapy sessions were terminated. (Tr. 101-22.) Although Claborn did experience set-backs when she discontinued her prescription medications, the set-backs were related to her discontinuing her medication against the advice of her physicians. (Tr. 122, 161.) Severe symptoms that can be reasonably controlled with medication or therapy are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

---

[3] On May 8, 1975, Claborn's only complaint was that she was not falling asleep until three or four o'clock in the morning. (Tr. 122.) Dr. Raines gave her a prescription for Thorazine to help her sleep, and after she took one tablet and slept through the night and the next day, Claborn's husband requested that another psychiatrist evaluate his wife. *Id.* An evaluation on May 15, 1975, indicates that at that time Claborn seemed to be functioning at a normal intellectual level and exhibited consistent and appropriate affect. (Tr. 124.) However, her insight was described as "poor," because she did not appear to understand her mental illness, and it was recommended that she undergo therapy to help her understand that her mental illness might always require treatment with prescription drugs and to help her work through issues in her past. *Id.* Notes from Claborn's therapy sessions indicate that although Claborn sometimes complained of depression, she did not suffer from delusions, hallucinations, or other symptoms that would conceivably prevent her from working. (Tr. 98-122.)

The mere presence of a severe impairment does not establish disability; rather, the claimant must meet his burden of showing that because of his impairment he is unable to work. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Claborn has not shown that her impairments were severe enough on either a continuous or sporadic basis to prevent her from engaging in the work described by the ALJ at anytime during the relevant period or for twelve months thereafter. Further, there is no evidence that she experienced waxing and waning symptoms from her schizophrenia after 1973 that would require the ALJ to specifically determine that she could maintain work during the time relevant to her claim. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002); *Singletary,* 798 F.2d at 822.

Finally, Claborn's argument that remand is required because the ALJ conducted an unfair hearing is unfounded. The ALJ questioned all parties present at the hearing, including Claborn and a testifying medical expert in a fair manner. (*See* Tr. 752-83.) Further, Claborn was represented at the hearing and the ALJ allowed her representative to develop testimony. (Tr. 773-79.) Finally, even assuming *arguendo* that the ALJ did not conduct the hearing in a fair and impartial manner, based on the facts in this case such error must be viewed as harmless. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335-36 (5th Cir. 1988) (error is harmless when it does not "render the ALJ's determination unsupported by substantial evidence and does not prejudice [the claimant's] substantive rights."); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error where it was "inconceivable that the ALJ would have reached a different conclusion" in absence of the error). The facts speak for themselves

in this case. Remanding Claborn's case for the purpose of holding another hearing would not result in a conclusion different from that before the court. Substantial evidence supports the decision and therefore it should be affirmed. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)

**IV.   Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commisioner's decision and dismiss Claborn's appeal.

**V.   Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   April 24, 2006.

NANCY M. KOENIG
United States Magistrate Judge

11